WILLIAM SCOTT *against* GARRET CONOVER, Survivor of GARRET CONOVER and DAVID GORDON.

1. An article of agreement, stating that the plaintiff "hath granted, bargained, and sold, and doth absolutely grant, bargain, and sell," and covenanting to give a good and sufficient *title* at a future day, upon the defendant's making certain payments, does itself convey the land, and the agreement to give a good *title* afterwards, means a more formal deed rather than *title*, strictly speaking.

2. An action of debt will not lie upon articles of agreement to pay a certain sum in *bank notes*, for they are not money.

3. The action should be covenant, in which the plaintiff can recover his real damages, according to the value of the bank notes.

This was an action of debt; plea, the general issue, with notice of set-off. It was brought before the court upon a case stated, in these words :

On the 8th December, 1815, the plaintiff and defendant, together with David Gordon, entered into the agreement set forth in the plaintiff's declaration, under their respective hands and seals, bearing date as aforesaid, which agreement witnesseth, that William Scott, for and in consideration of the just and full sum of five thousand one hundred and twenty-five dollars, current bank notes of the state of New Jersey and New York, of each an equal proportion, to be paid in manner following : that is to say, two thousand one hundred and twenty-five dollars on the first day of April, in the year eighteen hundred and sixteen ; the remaining three thousand dollars to be paid in three equal annual payments; the first to commence on the first day of April, in the year eighteen hundred and seventeen, with interest on the whole, from the first day of April next ensuing; the interest on the whole to be paid annually. For the above consideration, the said William Scott hath granted, bargained and sold, and by these presents doth absolutely grant, bargain and sell all them two lots of land situate, lying, and being in Middletown Point, with all the improvements thereon, eighteen or nineteen acres, together with all the property contained in an inventory dated April 1, 1815, amounting to one hundred and seventy-five dollars and fifty-nine cents. It is further agreed between the parties, that upon the said Garret H. Conover and David Gordon paying the above payments, and securing the payment of the remainder by mortgaging the premises ; the said William Scott to give a good and sufficient title for the aforesaid lots of land, and deliver the property mentioned in this agreement to the said Garret H. Conover and David Gordon, on the first day of April ensuing. For the true performance of all and singular the above agreement, the parties bind themselves to each other in the sum of one thousand dollars.

At the time of the execution of the said agreement, Garret H. Conover paid to the plaintiff ten dollars, part of the purchase money therein mentioned; and on the first day of April, 1816, entered into the possession of the premises therein mentioned, with the said David Gordon; and the said Garret and David held and enjoyed the same, until the death of the said David Gordon, since the commencement of this suit, and the said Garret still continues in the possession thereof (except as hereafter excepted).

The plaintiff, on the 1st of April, 1816, delivered to the defendants, Garret and David, possession of the property contained in an inventory dated April 1, 1816, amounting to $175.59, pursuant to the article of agreement, and took a receipt therefor.

The defendants, Gordon and Conover, did not pay the sum of $2,125 to the plaintiff on the 1st of April, 1816, pursuant to the said agreement, but did pay to the plaintiff, in part payment thereof, and which was accepted by the plaintiff as part payment thereof, the following sums at the times herein mentioned, viz.:

| | |
|---|---:|
| The before mentioned sum of ten dollars on December 8, 1815 | $10 10 |
| April 8, 1816 | 732 50 |
| —— 22, 1816 | 780 00 |
| May 14, 1816 | 100 00 |
| July 10, 1816 | 220 00 |
| November 8, 1816 | 80 00 |
| September 4, 1817 | 25 00 |
| December 6, 1817 | 10 00 |
| August 15, 1818 | 63 00 |
| September 30, 1818 | 48 25 |
| April 21, 1819 | 4 14 |
| | $2,073 14 |

Scott *v.* Conover.

On the 1st April, 1816, the defendants did not tender to the plaintiff a mortgage on the premises, to secure the payment of the residue of the money mentioned in the agreement, nor did they, or either of them, make any payments thereon other than those specified, nor have they, or either of them, since offered to execute any mortgage on the premises.

The plaintiff did not, on the 1st April, 1816, execute any deed to the defendants, conveying to them the premises in fee, nor did he offer to execute or deliver a deed to them, nor was he required so to do, but on the 4th May, 1818, did sign, seal, and acknowledge, in due form of law, a deed for the premises, with full covenants of seizin and warrantee, which said deed he did afterwards, on the same day, tender to the defendants, and request them to pay the sum remaining due on the first payment in the said articles of agreement mentioned, and to mortgage the premises to him to secure the remainder, in performance of the said agreement, which they refused to do.

Previous to the said agreement, to wit, on the 27th March, 1807, Zachariah Clevenger, being owner of the premises, did, together with his wife Elsey, mortgage the said premses, amongst others, to Lewis Abrams and Lewis Gordon, to secure the payment of three thousand dollars, which mortgage was duly acknowledged and recorded pursuant to law, which mortgage, together with the securities for the moneys due thereon, were on the 5th of April, 1817, assigned to William Scott, the plaintiff, and the plaintiff hath kept said mortgage on foot ever since, to protect his title.

At the time of the execution of the said articles of agreement, one Matthew Roberts was in possession of three acres of lot No. 2, in said articles mentioned, holding and claiming title under a deed executed to him by the said Zachariah Clevenger, then being the owner of the equity of redemption thereof, subject to said mortgage and execution, after said mortgage, to wit, on the 13th April, 1808, and con-

tinued in possession thereof until the 15th February, 1819, when the plaintiff recovered possession thereof, by virtue of a writ of *habere facias possessionem*, issued on a judgment in ejectment founded on the said mortgage, and the said plaintiff has continued in possession of the said lot ever since, but is willing and ready to. deliver the possession thereof to the defendants when they comply with the said contract.

It is agreed between the parties, that if the Supreme Court should be of opinion that the plaintiff is entitled to recover in this suit, the whole of the balance of the purchase money, then judgment is to be entered for the plaintiff. And if the court should be of opinion that any deduction is to be made on account of the Roberts lot, or for the rent thereof, then that the sum of ———, the value thereof, be deducted, or the interest of the said sum as rents, as the case may be. And it is further agreed, that in case the said court should be of opinion that the plaintiff is not entitled to recover, as aforesaid, then judgment to be entered for the defendant, with the costs. And it is further agreed, that either party may turn this case into a special verdict, and bring a writ of error within one term after the entry of the judgment.

This case was submitted to the court upon a written argument by *Wall*, for plaintiff, and *Wood*, for defendant.

The opinion of the court was delivered by

KIRKPATRICK, C. J. If an action of debt will lie upon a contract to pay in bank notes, I should think the plaintiff entitled to recover. The article of agreement itself conveys the land. It certifies, that for the consideration therein expressed, the plaintiff "*hath granted, bargained, and sold, and doth absolutely grant, bargain, and sell,*" &c.; and the agreement to give a good and sufficient title, afterwards, ought rather to be construed of a more formal deed containing further assurances, than of title, strictly speaking. The

land had already passed; the defendant had actually entered upon it, in pursuance of the article; had become clothed with the possession of it, and made his payments, in part, for it. According to my view of the case, therefore, the plaintiff could never recover it back out of his hands; and if he cannot now recover the price, he must lose it altogether. Besides, even if it were otherwise, and the land did not pass by the article, yet the defendant, by his taking and holding the possession of it under the contract, and paying from time to time, has waived the time of making the deed, and has kept the contract open, and so has made the tender of the deed set forth in the case a good and lawful tender; at least, as to all but the three cases, and, as to them, the court is, by the agreement, authorized to ascertain and deduct their value from the whole amount. Upon the whole of the case, therefore, and the agreement of the parties, taken together, under this view of it, and upon the supposition above made, I should see no objection to rendering judgment for the plaintiff. But still I cannot bring myself to render such judgment, because I think an action of debt will not lie upon a contract to pay in bank notes.

Bank notes are not money. They are not always, and in all places, of the value of money. They were not so at the time of this contract; the two kinds specified were of different values, and both, counting them upon the face, much under the value of money, I mean money of the United States, which is the only lawful money we know of; but it is of no consequence whether they were of less, or of equal, or of greater value, still they are not the thing itself; they are no standard of value. Suppose the contract had been to pay in the bank notes of Kentucky, which we are told are now depreciated one hundred per cent., should we now here render judgment for the whole amount in lawful money? And can we, sitting here, distinguish between the notes of one state and those of another, and say, these are at par, and those are not so?

It is true, that, in common parlance, bank notes are called money; they pass from hand to hand like money, and without endorsement; they are, by common consent, a sort of common measure of value; they were so, of necessity, even when the banks had stopped payment, and when they were five-and-twenty per cent. below the value of money; and they are so even at this day, in some of the western states, where they are one-half below it.

When Lord Mansfield speaks of them as money, he is speaking of their nature as a currency; as distinguished from common negotiable notes; as passing without endorsement; and of the rights and liabilities of those who receive and pass them. In these respects he represents them, and represents them truly, as of the nature of money. He says, too, that by a bequest of money in a will, bank notes will pass; and the reason is, because in common discourse, they are called money, and it is to be presumed the testator intended they should pass as such. But however by their common currency they may resemble money, and however by the common consent they may answer the purposes of money, yet they certainly are not so in reality, nor have they a certain fixed value when compared with it.

What Lord Mansfield says, therefore, must be taken with certain qualifications arising from the subject matter of which he was speaking, and not in absolute sense. Besides, even Lord Mansfield did not say, nor has any other judge ever said, so far as I know, that an action of debt would lie upon a contract to pay in bank notes.

The remedy of the plaintiff, therefore, I think, would be in an action of covenant, in which he would recover his real damages, according to the then value of the bank notes, and according to the equity of the case.

I think, upon these principles, there must be judgment for the defendant.